UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>CASEY LOYA,<br><br>　　Defendant | No. 1:22-CR-10077-DJC-11 |

**GOVERNMENT'S SENTENCING MEMORANDUM**

The United States submits this memorandum in connection with the sentencing of defendant Casey Loya (the "Defendant"), who pleaded guilty to conspiracy to commit marriage fraud and immigration document fraud for his role in recruiting U.S. citizens to serve as sham spouses to non-citizens seeking green cards. For the reasons set forth below, the government respectfully recommends that the Court sentence the Defendant to a term of imprisonment of 12 months, followed by three years of supervised release.[1]

**I.    Factual Summary**

The Defendant served as a "broker" of U.S. citizens in co-defendant Marcialito Benitez's marriage and immigration fraud operation. Benitez arranged sham marriages between non-citizens seeking green cards and citizens who were willing to marry those clients for money. Benitez and other co-defendants then assisted non-citizens with deceiving immigration authorities into approving green cards for those non-citizens based on those sham marriages. Benitez relied on brokers like Loya to identify U.S. citizens who were willing to enter into sham marriages for pay.

---

[1] The government also recommends that the Court order that the Defendant pay a fine within the advisory Guidelines range unless the Court finds that the Defendant is unable to pay a fine. A fine is appropriate in this case because, although the Defendant received cash commissions for recruiting each U.S. citizen, those amounts are indeterminate for purposes of forfeiture.

The Defendant first became involved in the scheme when another of the brokers, co-defendant Devon Hammer, recruited the Defendant to marry one of Benitez's clients. Thereafter, by at least October 2020, and continuing until his arrest in April 2022, the Defendant identified other U.S. citizens to serve as sham spouses for pay. He regularly messaged with Benitez about the citizens he recruited and sent Benitez photographs of the citizens to share with clients. Once a client agreed to marry someone the Defendant recruited, the Defendant would send Benitez the person's address, birth certificate, Social Security number, and other information that Benitez needed for completing marriage licenses and immigration applications. The Defendant and Benitez discussed spouses' job information and agreed to inflate or fabricate job titles and incomes when presenting the citizens to clients (to make the citizen a more appealing spouse to the client) and on immigration documents (to satisfy requirements that the spouse be able to financially support the non-citizen applicant). Before sham marriage ceremonies with Benitez's clients, the Defendant would ensure that his recruits dressed appropriately and understood their agreements with Benitez's clients. Once his recruits had married Benitez's clients, the Defendant practiced interview questions with them and intervened if a recruit became uncommunicative or uncooperative with Benitez's client, especially as the client's green card interview neared.

The spouses that the Defendant recruited typically were willing to be paid to commit fraud because of the financial pressures they faced. For his part, the Defendant received a cash commission for each spouse he recruited, typically in an amount of around $2,000 or $3,000. United States Citizenship and Immigration Services ("USCIS") has confirmed that it received at least 19 specific applications from clients of Benitez who married citizens recruited by the Defendant.

On November 15, 2023, the Defendant pleaded guilty to the one-count Indictment charging him with conspiracy to commit marriage fraud and immigration document fraud, in violation of 18 U.S.C. § 371. Dkt. 184. The sentencing hearing is set for April 17, 2024.

## II.     Applicable Sentencing Guidelines

The parties entered into a plea agreement (Dkt. 160), in which they agreed that the Defendant's total offense level is 12, calculated as follows:

- The base offense level is 11, because the objects of the charged conspiracy—marriage fraud under 8 U.S.C. § 1325(c) and immigration document fraud under 18 U.S.C. § 1546(a)—are referenced to USSG §2L2.1 (USSG §2L2.1(a));

- The offense level is increased by 3, because the Defendant's offense involved at least 6 fraudulent immigration documents (USSG §2L2.1(b)(2)(A)); and

- The offense level is decreased by 2, because the Defendant has accepted responsibility for the crimes (USSG § 3E1.1).

The Probation Office agrees with this calculation. The Defendant's prior criminal convictions place him in criminal history category II. The resulting advisory Guidelines range is 12-18 months, in Zone C of the Sentencing Table.[2]

## III.    Application of the Guidelines and Section 3553(a) Factors

The Guidelines "serve as the starting point for the district court's decision and anchor the court's discretion in selecting an appropriate sentence." *United States v. Molina-Martinez*, 136 S. Ct. 1338, 1349 (2016). Once the sentencing court has established the Guidelines Sentencing Range (including a consideration of any applicable departures), it must then evaluate the sentencing factors set out in 18 U.S.C. § 3553(a). *United States v. Dixon*, 449 F.3d 194, 204 (1st Cir. 2006).

---

[2] Because the total offense level falls within Zone C, the Guidelines provide that the minimum term may be satisfied by a sentence that includes home detention, provided that at least half of the term is satisfied by imprisonment. See USSG § 5C1.1(d)(2).

The goal is to fashion "a sentence sufficient, but not greater than necessary," for the achievement of the legitimate objectives of sentencing. 18 U.S.C. § 3553(a); *Dixon*, 449 F.3d at 204.

The § 3553(a) factors support a 12-month sentence, which is both at the low end of the applicable Guidelines advisory sentencing range and consistent with sentences received by similarly situated brokers in the scheme.

  A. *Nature, Circumstances, and Seriousness of the Offense*

The recommended prison sentence appropriately reflects the nature and seriousness of the offense. *See* 18 U.S.C. § 3553(a)(2)(A).

The Defendant participated in a sweeping scheme to bypass existing requirements for obtaining green cards. The United States provides avenues to permanent residence and, ultimately, citizenship for certain immediate relatives of U.S. citizens. The process of applying for a green card involves significant paperwork and time. In 2021, United States Citizenship and Immigration Services (USCIS) received over 700,000 applications for lawful permanent residence status, including approximately 311,000 family-based applications.[3] For these family-based applications, USCIS conducts interviews of applicants and their relatives to confirm applicants' eligibility for adjustment of status. Eligible non-citizens face long wait times to get a green card in large part because of the need to identify and deny the applications of those who attempt to obtain a green card by fraud. Benitez's agency confounded immigration authorities' efforts to enforce eligibility requirements and grant resident status to individuals who qualify through real relationships with citizens.

---

[3] USCIS, *Annual Statistical Report: FY 2021*, https://www.uscis.gov/sites/default/files/document/reports/2021%20USCIS%20Statistical%20Annual%20Report.pdf.

The Defendant filled an important role in this scheme. The agency succeeded and grew to the scale that it did because the Defendant and several other brokers consistently supplied citizens willing to sell their name, marital status, and cooperation to the agency's clients. The recruiters found cash-strapped individuals and offered them the possibility of quick, easy money from immigration fraud. Each time the Defendant did this, he received a few thousand dollars in cash. A sentence at the low-end of the advisory range reflects that the Defendant induced others to commit immigration fraud for personal gain and did so more than a dozen times.

    B.    *History and Characteristics of the Defendant*

The government's recommendation accounts for the Defendant's history and personal characteristics. *See* 18 U.S.C. § 3553(a)(1). The Defendant had a modest but stable upbringing in the Los Angeles area with a supportive family. For eight years leading up to the present offense, he worked as a branch manager at a major national bank and made a comfortable salary. He presently works as a real estate agent.

The Defendant has prior convictions for driving under the influence and for driving with a suspended license, the latter of which occurred while he was on probation in connection with the former. The record also reflects numerous failures to appear in court and probation violations. The government's recommendation reflects the Defendant's criminal history and his more recent decision to profit from immigration fraud even while he held respectable and gainful employment.

    C.    *Promoting Respect for the Law, Just Punishment, and Adequate Deterrence*

The sentence recommended by the government would "afford adequate deterrence to criminal conduct." *See* 18 U.S.C. § 3553(a)(2)(B). It would deter others who might be tempted to assist individuals with obtaining lawful immigration status in the United States through

fraudulent pretenses.  The volume of petitions received each year by USCIS and the significant resources required to screen petitions for fraud make general deterrence critical.

This kind of offense also harms public trust in lawful immigration and in the authorities who enforce the immigration laws.  The Defendant's sentence should reflect the need to promote respect for the law, in addition to sending the deterrent message that there are consequences to defrauding the immigration system for status or for profit.

      D.      *Avoiding Unwarranted Sentencing Disparities*

A sentence of 12 months is consistent with the sentences that the Court has imposed in this case to date.  Three co-defendants (Devon Hammer, Karina Santos, and Peterson Souza) received prison sentences for their recruitment of U.S. citizen-spouses or referral of new clients to Benitez.

The Defendant is comparable to, though somewhat less culpable than, Santos.  Santos recruited approximately 31 to 40 citizens in generally the same manner.  Her criminal convictions, including one for driving under the influence, resulted in the same criminal history category (II).  Like the Defendant, Santos entered the scheme first as a sham spouse.  Unlike the Defendant, Santos had not maintained stable employment or pay before and during the offense.  For Santos, the government recommended a sentence of 18 months (the low end of the applicable advisory Guidelines range), and the Court imposed a sentence of a year and a day in prison.

The Defendant is also comparable to Souza, who received commissions for referring approximately 20 to 26 non-citizen clients to Benitez.  However, Souza had no criminal history.  Souza additionally incurred adverse immigration consequences from his conviction.  For Souza, the government recommended a sentence of 15 months, and the Court imposed a 10-month split sentence (five months in prison and five months on home detention).

A 12-month sentence therefore is appropriate both on its own and in relation to the sentences that the most similarly situated co-defendants received.

The recommended sentence also is comfortably within range of sentences imposed in other federal cases involving participants in marriage fraud rings. *See*, *e.g.*, *United States v. Krystal Cloud*, Crim. No. 5:18-cr-00032-TKW-MJF-2 (N.D. Fl. 2019) (24-month sentence for recruiter of 10 or more U.S. citizens to marry foreign nationals as part of larger marriage fraud scheme orchestrated by a co-defendant; indictment charged defendant with conspiracy to commit marriage fraud and immigration document fraud and alleged that defendant received $300 per recruit); *United States v. Ashley Yen Nguyen, et al.*, Crim. No. H-4:19-cr-00234-S (S.D. Tex. 2022) (sentences of 12 months and 34 months imposed with respect to defendants Kristine Guzman and Janie Gonzalez, each of whom acted as the sham citizen-spouse for a foreign national and then recruited other citizens to do the same, in connection with co-defendant's marriage fraud scheme); *United States v. Shannon Mendoza*, Crim. No. 17-70 (E.D. Pa. 2017) (14-month sentence for U.S. citizen who entered sham marriage with non-citizen in connection with marriage fraud scheme and subsequently recruited another citizen to do the same, in same scheme). These cases involved recruiters whose culpability falls short of the Defendant's in terms of volume, frequency, and level of involvement in the continuation of the marriage fraud scheme.

## CONCLUSION

For the reasons herein, the government recommends a low-end of Guidelines sentence of 12 months imprisonment followed by 36 months of supervised release. This sentence is sufficient, but not greater than necessary, to reflect the circumstances and the seriousness of the Defendant's offense, to promote respect for the law, and to afford adequate deterrence.

                        Respectfully submitted,

                        JOSHUA S. LEVY
                        Acting United States Attorney

By:   /s/ *David M. Holcomb*
        DAVID M. HOLCOMB
        Assistant United States Attorney
        John Joseph Moakley United States Courthouse
        1 Courthouse Way, Suite 9200
        Boston, MA 02210
        (617) 748-3000

Dated: April 10, 2024

## **CERTIFICATE OF SERVICE**

      I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF).

                                /s/ *David M. Holcomb*
                                David M. Holcomb
                                Assistant United States Attorney

Date: April 10, 2024